# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| EMSAT ADVANCED GEO-LOCATION TECHNOLOGY, LLC | ) | CASE NO. 4:08 CV 00822 |
| | ) | |
| and | ) | |
| | ) | |
| LOCATION BASED SERVICES LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| | ) | |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF OF AT&T MOBILITY LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT.................................................................................................................2

    I.    AT&T MOBILITY'S INDEMNITY RIGHT IS NOT RESTRICTED
         TO THIRD PARTY CLAIMS.............................................................................2

        A.    The Indemnity Provision, By Its Terms, Is Not Limited to Third
             Party Claims.......................................................................................2

        B.    Under Ohio Law, Unless an Indemnity Provision Is
             Expressly Limited to Third Party Claims, It Is Interpreted
             To Apply Both to Third-Party Reimbursement Situations and to
             Direct Losses Suffered by the Parties ......................................................3

        C.    Any Ambiguity About Whether the Indemnity Right Is Limited to
             Third Party Claims Should Be Resolved Against Plaintiffs. ....................4

        D.    The Other Terms of the Assignment Agreement Create No Ambiguity
             About the Broad Scope of the Indemnity Right.......................................4

             1.    Sygnet Wireless's Agreement to Convey "All Right,
                 Title, and Interest" to the Patents-in-Suit Creates No
                 Uncertainty About the Broad Scope of the Indemnity Right........4

             2.    Sygnet Wireless's Agreement Not to "Use" the Assigned
                 Assets Creates No Uncertainty About the Broad
                 Scope of the Indemnity Right. ......................................................6

             3.    The Assumption of Defense Provision of the Assignment
                 Contract Creates No Uncertainty About the Broad Scope
                 of the Indemnity Right .................................................................10

        E.    The Contract Interpretation Urged By AT&T Mobility Makes
             Commercial Sense ................................................................................11

        F.    The Contract Interpretation Urged By Plaintiffs Makes No
             Commercial Sense. ...............................................................................12

        G.    This Case Is Different From *Mead Corp. v. ABB Power
             Generation, Inc.* ..................................................................................14

II.     THERE IS NO EVIDENCE THAT AT&T MOBILITY USED THE
        ASSIGNED ASSETS TO DEVELOP THE ACCUSED PRODUCTS AND
        SERVICES, BUT EVEN IF THERE WERE, PLAINTIFFS COULD NOT
        BRING THE PRESENT LAWSUIT FOR PATENT
        INFRINGEMENT....................................................................................................14

        A.      If Plaintiffs Wanted to Argue that AT&T Mobility Used the
                Assigned Assets to Develop the Accused Products and
                Services, Plaintiffs Were Obliged to Accompany Their
                Response Brief With Evidence Sufficient to Create a
                Disputed Issue of Fact..........................................................................15

        B.      In Any Event, Even If AT&T Mobility Breached the Contract With
                Sycord Limited Partnership, Plaintiffs' Present Cause of Action Sounds in
                Tort, Not Breach of Contract, and All Tort Claims Relating to the
                Assigned Assets Are Barred by the Indemnity Right ............................15

III.    EVEN IF THE INDEMNITY RIGHT WERE LIMITED TO THIRD
        PARTY CLAIMS, THE INDEMNITY RIGHT WOULD STILL BAR THIS
        LAWSUIT BECAUSE ONE OF THE PLAINTIFFS, LOCATION BASED
        SERVICES LLC, IS A THIRD PARTY .........................................................17

IV.     UNDER THE LAW WHICH GOVERNS THIS CASE, CIRCULAR
        INDEMNITY BARS PLAINTIFFS' PATENT INFRINGEMENT CLAIM..................17

        A.      Indemnification For Patent Infringement Does Not Violate the Public
                Policy of Ohio, But Instead Is an Implied Term Imposed By the Ohio
                Uniform Commercial Code On Many Sales of Goods .........................18

        B.      Circular Indemnity Has Been Used Before to Bar a
                Patent Infringement Claim....................................................................19

V.      PLAINTIFFS' "DECREASE IN VALUE" ARGUMENT IS MERITLESS. ..................20

VI.     BECAUSE AT&T MOBILITY'S INDEMNITY RIGHT COVERS ALL OF
        THE PERIOD AT ISSUE, THE ENTIRETY OF PLAINTIFFS' PATENT
        INFRINGEMENT CLAIM IS BARRED ........................................................21

CONCLUSION....................................................................................................21

# TABLE OF CASES

CASES                                                                                          PAGE(S)

*Airtran Airways, Inc. v. City of Chicago*, 2003 U.S. Dist. LEXIS 26939
(N.D. Ill. Dec. 16, 2003) ........................................................................... 11, 16, 20

*Battelle Memorial Institute v. Nowsco Pipeline Services, Inc.*, 56 F. Supp. 2d
944 (S.D. Ohio 1999)............................................................................... 3, 10, 21

*Berjian v. Ohio Bell Telephone Co.*, 54 Ohio St. 2d 147, 375 N.E.2d 410 (1978)......................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................15

*Clarke v. United States*, 2009 U.S. Dist. LEXIS 18916 (March 4, 2009 N.D. Ohio) ..................15

*Cover v. Hydramatic Packing Co.*, 83 F.3d 1390 (Fed. Cir. 1996) ..............................................18

*General Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368 (Fed. Cir. 2007)....................5, 21

*Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 677 N.E.2d 949 (1996)................................13

*Hedged Investment Partners, L.P. v. Norwest Bank Minn., N.A.,* 578 N.W.2d 765 (Minn.
Ct. App. 1998)......................................................................................................20

*Hilton Davis Chemical Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512 (Fed. Cir. 1995)............7, 18

*Indep. Ins. Agents of Ohio v. Fabe*, 63 Ohio St. 3d 310, 587 N.E.2d 814 (1992) ..........................8

*Linhart v. Standard Oil Co.*, 1983 Ohio App. LEXIS 12895 (Ct. App. Aug. 4, 1983)............4, 14

*Mead Corp. v. ABB Power Generation, Inc.*, 141 F. Supp. 2d 914 (S.D. Ohio), *aff'd in
part and rev'd in part*, 319 F.3d 790 (6th Cir. 2003)...............................................14

*Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136 (Fed. Cir. 2008)..................16

*In re Monro*, 282 B.R. 841 (Bankr. N.D. Ohio 2002) ....................................................8

*O'Kane v. Apfel*, 224 F.3d 686 (7th Cir. 2000)..............................................................8

*RFR Industries, Inc. v. Rex-Hide Industries, Inc.*, 2007 U.S. App. LEXIS 7015
(Fed. Cir. March 23, 2007) (unpublished) ............................................................19

*Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971
(Fed. Cir. 2005)...........................................................................................................6

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir.
1991) ...........................................................................................................................17

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ........................................7

## STATUTES AND RULES

Fed.R.App.Pr. 32.1 ................................................................................................................19

Ohio Rev. Code Ann. 1302.25................................................................................................18

## OTHER AUTHORITIES

*Restatement (Second) of Contracts* (1981) ...............................................................................20

## <u>INTRODUCTION</u>

Plaintiffs' response brief does not quarrel with most of the key points underlying AT&T Mobility's summary judgment motion.  Plaintiffs do not dispute that

- the assignment to AT&T Mobility was proper;

- AT&T Mobility now stands in the shoes of Sygnet Wireless;

- courts routinely enforce assignment provisions that allow for the transfer of patent-related agreements not to sue;

- EMSAT Advanced Geo-Location Technology, LLC and Location Based Services LLC are both bound by the legal effect of the indemnity given by Sycord Limited Partnership; and

- AT&T Mobility has been put in the impossible position of being unable to talk to one of its own employees about the present litigation (even though he is one of the inventors of the patents-in-suit), because plaintiffs' counsel say that they represent this individual for purposes of this case.  (A 25-26, 178-79)

Instead of disputing these points, plaintiffs mainly argue that the indemnity provision in the Assignment Agreement is limited to third party claims.  But the contract language is perfectly clear on this point:  Sycord Limited Partnership promised to indemnify Sygnet Wireless for "any and all" claims relating to the patents-in-suit, not merely third party claims.  When it agreed to this indemnity, Sycord Limited Partnership gave up the ability to bring such claims itself.

There is no ambiguity about the fact that the indemnity covers "any and all" claims relating to the patents-in-suit, including the claims in this lawsuit.  If there were any ambiguity, however, the Court could resolve the ambiguity by using a "tie breaker" that has been employed by Ohio courts.  Under that "tie breaker," when two readings of a contract are equally plausible, an Ohio court chooses the reading that gives the indemnity provision its broadest scope. Invoking that "tie breaker" here would mean that AT&T Mobility wins.

In any event, even if plaintiffs were right that the indemnity provision in the Assignment Agreement was limited to third party claims, the present lawsuit would still be barred.  Plaintiff Location Based Services LLC is the "exclusive licensee" of the patents-in-suit.  *Complaint*, ¶12 (Mar. 31, 2008) (Filing No. 1).  As such, it is a successor to Sycord Limited Partnership so far as the patents are concerned.  However, the Assignment Agreement itself was never assigned to Location Based Services LLC.  Accordingly, with respect to the Assignment Agreement, Location Based Services LLC ***is*** a third party, and its patent infringement claims ***are*** subject to the indemnity provision (even under plaintiffs' reading).  The other plaintiff, EMSAT Advanced Geo-Location Technology, LLC, cannot maintain this suit by itself, because Location Based Services LLC "possesses the exclusive right to sue for past, present, and future infringement." *Id*.

Finally, plaintiffs argue that patent indemnities are unenforceable because they violate the public policy of Ohio.  However, no Ohio court has ever refused to enforce a patent indemnity agreement on this basis.  Indeed, the Ohio Uniform Commercial Code imposes an ***implied*** indemnity for patent infringement in many Ohio contracts for the sale of goods.  Therefore, patent indemnities are not only permitted under Ohio law, they are favored.

## ARGUMENT

## I.    AT&T MOBILITY'S INDEMNITY RIGHT IS NOT RESTRICTED TO THIRD PARTY CLAIMS.

### A.    The Indemnity Provision, By Its Terms, Is Not Limited to Third Party Claims.

Sycord Limited Partnership agreed to "indemnify and hold harmless" Sygnet Wireless "from and against ***any and all losses***, liabilities, damages, ***claims***, demands, costs (which costs shall not include the fees and expenses of legal counsel, if any, retained by such person),

obligations, deficiencies and expenses ***arising from the Assigned Assets***."  (A 4, ¶6(a), emphasis

added)  The "Assigned Assets" included the patents-in-suit in this case.  (A 11)  By its terms,

therefore, the indemnity right extended to "any and all losses" or "claims" that arose "from the

Assigned Assets," not just third party claims.

Plaintiffs want to read language into the indemnity provision ("for claims brought by

third parties") that the parties never agreed to.  That is disfavored under Ohio law.  The

indemnity provision:

> does not say "for claims brought by third parties."  Nowsco [in this case, Sycord
> Limited Partnership] could have added such language if it so intended to narrow
> the indemnity provision.  Indemnity agreements are interpreted, like any contract,
> to conform to the intent of the parties.

*Battelle Memorial Institute v. Nowsco Pipeline Services, Inc.*, 56 F. Supp. 2d 944, 951 (S.D.

Ohio 1999).  The parties here obviously knew how to carve things out from the scope of the

indemnity provision.  Attorneys' fees were carved out.  (A 4, ¶6(a))  Claims by the parties

themselves were not.  (*Id.*)

### B.   Under Ohio Law, Unless an Indemnity Provision is Expressly Limited to Third Party Claims, It Is Interpreted to Apply Both to Third-Party Reimbursement Situations and to Direct Losses Suffered by the Parties.

It is "clear from both Ohio and Sixth Circuit definitions of indemnification that a party

wishing to narrow an indemnification clause to third-party damage is obligated to limit the scope

of the clause expressly; and absent such express limitation, indemnification clauses may apply to

damage suffered by the contracting parties themselves."  *Battelle*, 56 F.Supp.2d at 951.  The

indemnity provision here was not expressly limited to third party claims.  Therefore, under Ohio

law, it applies "to damages suffered by the contracting parties themselves."  *Id.*

**C.** **Any Ambiguity About Whether the Indemnity Right Is Limited to Third Party Claims Should Be Resolved Against Plaintiffs.**

There is no ambiguity about the language of the indemnity provision:  it extends to "any and all" claims "arising from the Assigned Assets after the Effective Date."  (A 4, ¶6(a))  This plainly encompasses tort claims relating to the Assigned Assets that are asserted by Sycord Limited Partnership or its successors.

If there were any ambiguity on this point, the ambiguity should be resolved against the plaintiffs.  Under Ohio law, "where the terms employed" in a contract "are ambiguous and susceptible of two interpretations which seem equally fair, that interpretation should be adopted which affords the greater indemnity."  *Linhart v. Standard Oil Co.*, 1983 Ohio App. LEXIS 12895 at *7 (Ct. App. Aug. 4, 1983).   Not limiting the indemnity right to third party claims affords the greater indemnity.

**D.** **The Other Terms of the Assignment Agreement Create No Ambiguity About the Broad Scope of the Indemnity Right.**

Rather than focusing on the plain language of the indemnity provision itself, plaintiffs spend most of their response brief discussing other parts of the Assignment Agreement – arguing that those other parts of the contract both (a) conflict with the broad language of the indemnity provision, and (b) trump it.  But the other terms of the Assignment Agreement, when properly understood, create no uncertainty about whether the indemnity provision covers the patent infringement claims that are at issue in this case.

**1.** **Sygnet Wireless's Agreement to Convey "All Right, Title, and Interest" to the Patents-in-Suit Creates No Uncertainty About the Broad Scope of the Indemnity Right.**

Plaintiffs note that the Assignment Agreement conveyed to Sycord Limited Partnership "all right, title and interest" to the patents-in-suit, including any rights of Sygnet Wireless "as a

licensee." Pl. Mem. at 8.  Therefore, according to plaintiffs, the indemnity provision could not

extend to patent infringement claims brought by Sycord Limited Partnership against Sygnet

Wireless, despite the fact that the indemnity provision, by its terms, covers "any and all" claims

"arising from the Assigned Assets occurring after the Effective Date."  (A 4, ¶6(a))

In fact, there is no inconsistency between this conveyance language, on one hand, and the

broad scope of the indemnity provision, on the other.  An agreement not to assert a patent can be

expressed as a covenant-not-to-sue, a release, a license, or an indemnity.  *See General Mills, Inc.*

*v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1371 (Fed. Cir. 2007) (patent owner granted no

license, but did grant "a release of its patent claims and a covenant not to sue Farley for past,

current, or future infringement").  What matters is the presence – in some form – of the promise

not to sue, rather than the exact label chosen by the parties.

In this case, the parties agreed that Sygnet Wireless was not a licensee to the patents-in-

suit, while also agreeing that Sycord Limited Partnership would not bring infringement litigation

against Sygnet Wireless.  The agreement not to bring infringement litigation was captured as part

of Sygnet Wireless's broad indemnity provision, rather than being phrased in terms of a license.

As a result of this contractual arrangement, Sycord agreed to desist from filing suit, while Sygnet

Wireless agreed not to call itself a licensee.  This benefited both parties.  Because Sycord

Limited Partnership agreed to desist from filing suit, Sygnet Wireless did not need to concern

itself about being sued on the patents that it had just sold.  And because Sygnet Wireless agreed

not to call itself a licensee, Sycord Limited Partnership could take the position that it still had the

ability to ***exclusively*** license its patents to someone else.

An exclusive license has more potential value (and thus higher royalty potential) than a

nonexclusive license.  This is due to the fact that a "nonexclusive license confers no

constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." *Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).  To be sure, Sycord Limited Partnership took full advantage of the fact that Sygnet Wireless did not have the right to call itself a licensee, because Sycord later granted an exclusive license to Location Based Services LLC.  Location Based Services LLC, in turn, calls itself an "exclusive licensee" and has joined in the present litigation as a plaintiff.  *See Complaint*, ¶12 (Mar. 31, 2008) (Filing No. 1) (Location Based Services LLC is the "exclusive licensee" of the patents-in-suit and  "possesses the exclusive right to sue for past, present, and future infringement").

> **2.      Sygnet Wireless's Agreement Not to "Use" the Assigned Assets Creates No Uncertainty About the Broad Scope of the Indemnity Right.**

In the provision of the Assignment Agreement headed "Confidentiality," Sygnet Wireless agreed not to "disclose or divulge to a third party" any of the Assigned Assets, unless Sycord Limited Partnership agreed in advance to the disclosure.  (A 5, ¶8)  Sygnet Wireless also agreed, in the same provision (indeed, the same ***sentence***), not to "use for any purpose" any "of the Assigned Assets without the prior written consent" of Sycord Limited Partnership.  (A 5, ¶8)  The "Assigned Assets" included the patents-in-suit.  (A 2, ¶1(a)(i) & (d); A 3, ¶1(f))  Plaintiffs say that because Sygnet Wireless agreed not to "use" the patents-in-suit, the Assignment Agreement must be interpreted to permit a patent infringement suit against Sygnet Wireless.  Pl. Mem. at 6-7.

However, plaintiffs ignore the context of the "no use" promise.  The context was a confidentiality provision that prohibited Sygnet Wireless from revealing the Assigned Assets to others.  To the extent that Sygnet Wireless made an independent invention years later, and then

showed a third party what Sygnet had independently invented, that could not fall within the scope of the "no use" promise.

Plaintiffs also ignore the crucial difference between "infringing a claim in a patent" and "using a patent." Under the law, one can unintentionally infringe a patent claim, simply by developing a product that falls within the scope of the patent claims by sheer coincidence. *See Hilton Davis Chemical Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1520 (Fed. Cir. 1995) ("[i]ndependent development does not excuse infringement of the patent owner's right to exclude"), *reversed on other grounds, Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). By definition, however, "[i]ndependent development means that the accused infringer had no knowledge of the patented invention when it developed its product or process." *Id*. In that situation, there was no use of the patent.

For example, suppose that inventor Jones in Akron makes and patents a novel tire, and that inventor Smith in Youngstown independently makes a similarly novel tire at about the same time, knowing nothing of Jones' work. Smith's tire may very well infringe a claim in Jones' patent when the patent eventually issues. But Smith would not have "used" Jones' patent, because Smith was unaware of Jones, Jones' tire, or Jones' patent (which did not even exist yet) when Smith built his tire, and Smith's infringement of the subsequently-issued Jones patent claim (which occurs when Smith continues to make the Smith tire) is pure coincidence.

The contract here only prohibited "use" of "the Assigned Assets." Therefore, Sygnet Wireless was free to develop new products and services independently, so long as Sygnet Wireless made no "use" of any Assigned Asset in developing the new product or service. The assigned patent rights encompassed patents that had not yet issued, and it would have made no sense for Sygnet Wireless to have agreed not to infringe patent claims whose scope was

unknown.  After all, what steps could Sygnet take to avoid infringing patent claims that did not yet exist?

The Assignment Agreement contained an express reservation of Sygnet Wireless's broad right to employ future inventions and devices, stating that Sygnet Wireless:

> expressly reserves the right to improve, invent, develop, patent, submit for any application for patent, or other forms of protection, at any time for all past, present, and future inventions and devices, and to enter into any licenses and/or assignments or other transactions ***[note that the contract language employs no comma here]*** that do not arise from, relate to or involve the Assigned Assets.

(A 3, ¶2)  Thus, Sygnet Wireless expressly reserved the right to make any and all "future inventions and devices," so long as it did not "use" the Assigned Assets while doing so.

The absence of the indicated comma in the contract language in the block quote is crucial, because it shows that the limitation "that do not arise from, relate to or involve the Assigned Assets" was only a limitation on the immediately preceding language ("and to enter into any licenses and/or assignments or other transactions").  It was not a limitation on the earlier language concerning "future inventions and devices."

Ohio courts look to the placement of such commas as an interpretive tool:

> Under the standard rules of grammar, the effect of a modifying clause on the preceding phrase(s) is generally dependent on the presence or lack of a separating comma.  In this respect, the lack of a comma will, in most instances, involve the application of the principle of statutory construction known as the rule of the last antecedent, which, as the name implies, holds that where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it.  *See, e.g., Indep. Ins. Agents of Ohio v. Fabe*, 63 Ohio St. 3d 310, 314, 587 N.E.2d 814, 817 (1992); *O'Kane v. Apfel*, 224 F.3d 686, 690 (7th Cir. 2000).  By comparison, when a comma is placed between the modifying clause and the phrase(s) immediately preceding it, the general rule of statutory construction holds that the qualifying phrase applies not just to the phrase immediately preceding it, but instead to all of the antecedent[] phrases.

*In re Monro,* 282 B.R. 841, 844 (Bankr. N.D. Ohio 2002).  In the present case, because there is no comma after the word "transactions," the phrase "that do not arise from,

relate to or involve the Assigned Assets" only modifies "to enter into any licenses and/or assignments or other transactions."  It does not modify the earlier clause relating to new inventions and devices.

This language in the block quote therefore gave Sygnet Wireless two rights.  It had

- the right "to improve, invent, develop, patent, submit for any application for patent, or other forms of protection, at any time for all past, present, and future inventions and devices," and

- the right "to enter into any licenses and/or assignments or other transactions that do not arise from, relate to or involve the Assigned Assets."

Sygnet Wireless could therefore make new inventions and devices that unintentionally "involved" the Assigned Assets so long as it did not "use" the Assigned Assets while doing so.

So understood, the agreement by Sygnet Wireless not to "use" the Assigned Assets creates no uncertainty about the broad scope of the indemnification provision.  On one hand, Sygnet Wireless was free to develop new products and services independently, so long as it did not "use" the assigned patents to do so.  On the other hand, the indemnity provision created a bar to ***any*** patent infringement suit by Sycord Limited Partnership (at most, if Sygnet Wireless deliberately used the Assigned Assets to develop a new product or service, Sycord may have had a claim for breach of contract, as discussed below).  The "use" prohibition is therefore fully consistent with (a) giving a broad scope to the indemnity provision, and (b) barring any claim against Sygnet Wireless for infringing the patents-in-suit.

AT&T Mobility's construction of the Assignment Agreement is preferable to plaintiffs' construction for a simple reason:  AT&T Mobility gives meaning to ***all*** of the contract language as written, without reading terms into the contract to which the parties never agreed.  Under

AT&T Mobility's construction, the "use" prohibition in the contract has content – it prohibits copying or other deliberate application of the assigned patents – and it is potentially enforceable in a contract action, even though it is not enforceable in an action for patent infringement.  By contrast, plaintiffs ask the Court to interpolate a major limitation into the indemnity provision – that it only covers third party claims – when the contract itself says plainly that the indemnity covers "any and all" claims, not merely third party claims.

To be sure, the enforcement of the literal language of the indemnity provision would exculpate AT&T Mobility from any claim of patent infringement.  However, "Ohio courts have traditionally upheld exculpatory clauses executed by parties with relatively equal bargaining power, under a theory of freedom of contract." *Battelle,* 56 F.Supp.2d at 951.  *See Berjian v. Ohio Bell Telephone Co.*, 54 Ohio St. 2d 147, 157, 375 N.E.2d 410, 416 (1978) ("It would serve no clear public purpose to in effect make telephone companies insurers for the consequential damages sustained by their customers by holding that the companies cannot limit their liability to the cost of services provided in situations where they negligently omit or improperly list a customer's order in the classified directory").

>   3.   **The Assumption of Defense Provision of the Assignment Contract Creates No Uncertainty About the Broad Scope of the Indemnity Right.**

Plaintiffs note that under the indemnification provision of the Assignment Agreement, Sycord Limited Partnership had the right to assume the defense if an indemnification claim was made.  Pl. Mem. at 11.  According to plaintiffs, had the parties intended the indemnification clause to apply to claims asserted by Sygnet Wireless, "logically they would have provided a carveout for it in the right to defend provision of Section 6(b)." *Id*.

But no such carveout was needed.  If Sycord Limited Partnership sued Sygnet Wireless for a claim that was covered by the indemnity right, the suit would be barred, as it was in *Airtran Airways, Inc. v. City of Chicago*, 2003 U.S. Dist. LEXIS 26939 (N.D. Ill. Dec. 16, 2003).  There never would be any occasion to tender the defense, because no defense on the merits would ever be needed.

Having a "tender of defense" provision in the Assignment Agreement still made sense because the indemnity right covered, under longstanding Ohio law, both third party claims (where a tender of defense would be appropriate) and claims by Sycord Limited Partnership and its successors (where the litigation would end before the merits were addressed).

### E.   The Contract Interpretation Urged By AT&T Mobility Makes Commercial Sense.

Plaintiffs say that the contract interpretation urged by AT&T Mobility makes no commercial sense, because Sycord Limited Partnership would not have agreed to "pay valuable consideration to acquire patent rights" if it did not have the ability to prevent Sygnet Wireless and its successors "from practicing the patents' claimed inventions."  Pl. Mem. at 10.

But in return for the Assigned Assets that it acquired, Sycord Limited Partnership paid only $300,000 to Sygnet Wireless.  (A 3, ¶3(a))  Sycord Limited Partnership apparently envisioned a substantial return on this investment, which it was prepared to share with the individual inventors (who are referred to in the Assignment Agreement as the "Location Patent Group").  As the Assignment Agreement recited:

> In the event [Sycord Limited Partnership] is able to commercialize the Assigned Assets by way of license or commercial sale ***to an unaffiliated third party***, [Sycord Limited Partnership shall] pay to the Location Patent Group an amount equal to twenty percent (20%) of the first $1,000,000 of Net Profits realized by Assignee which are attributable to such Assigned Assets prior to the expiration of Patent '633 and five percent (5%) of the next $9,000,000 of Net Profits

realized by Assignee which are attributable to such Assigned Assets prior to the expiration of Patent '633.

(A 3, ¶3(b), emphasis added)  Thus, if Sycord Limited Partnership had licensed or sold the Assigned Assets to "an unaffiliated third party" for $10,000,000, Sycord would have kept $9,350,000 and the individual inventors would have received $650,000.

The Assignment Agreement indicates that Sycord Limited Partnership intended to license or sell the Assigned Assets "to an unaffiliated third party."  *Id*.  Notably, Sygnet Wireless was a party to the Assignment Agreement, so it did not qualify as an unaffiliated third party.  In other words, there never was any expectation that Sygnet Wireless would pay money for a license (licenses were only going to be sold to unaffiliated third parties).  Sygnet Wireless did not need a license, of course, because the indemnity for "any and all" claims related to the Assigned Assets prevented Sycord Limited Partnership from suing Sygnet Wireless for infringement.

### F. The Contract Interpretation Urged By Plaintiffs Makes No Commercial Sense.

Plaintiffs have it exactly wrong:  it is their interpretation of the Assignment Agreement that makes no commercial sense.  Sygnet Wireless would hardly have entered into the Assignment Agreement if it had understood that Sycord Limited Partnership could turn around and sue it for infringement of the assigned patents, ***even in connection with a new product or service that was developed independently by Sygnet engineers knowing nothing about the assigned technology***.

The Assignment Agreement referred to no less than four U.S. patent applications that were pending in the Patent Office at the time.  (A 3, ¶1(f) & A 8)  Under the Assignment Agreement, Sycord Limited Partnership was going to own any and all patents that issued on these applications.  Sygnet Wireless had no way to know how many patent claims would

12

eventually issue from those applications, or what the scope of the future claims would be; the claims did not exist yet.  The subsequent history here bears out the risk to Sygnet Wireless:  the Assignment Agreement was signed in 1998, but the four patents-in-suit issued in 1999, 2001, 2005, and 2007, respectively. (A 1, 58, 77, 110, and 141)

No prudent business would give away patent rights of undefined scope without protecting itself against future infringement claims.  Sygnet Wireless's protection was the indemnity provision in the Assignment Agreement, which barred any patent infringement claim under any of the assigned patents that might issue in the future, whatever their eventual scope.

Sygnet Wireless also knew in 1998 that it was going to continue to employ many of the inventors (some of whom work for a subsidiary of AT&T Mobility today).  Sygnet Wireless would never have wanted to place itself at odds with its own inventor employees.  Indeed, Sygnet Wireless would not have gone forward with the transaction if it had believed that it could later be sued for infringing the patents-in-suit, and that plaintiffs' counsel would claim to represent individual inventors who still worked for Sygnet Wireless, thus preventing Sygnet Wireless from even talking to its own employees about the patent infringement suit.

AT&T Mobility has now been placed in precisely this awkward situation, given plaintiffs' insistence that they can sue AT&T Mobility despite the indemnity right that obligates them to desist from doing so.  The awkwardness of the situation underscores why plaintiffs' proposed reading of the contract should be rejected based upon the very case that they cite, *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 677 N.E.2d 949 (1996).  For it is their contract interpretation, and plaintiffs' counsel's representation of an employee of an AT&T Mobility subsidiary (A 25-26, 178-79), which leads to an arrangement that is "inequitable,

unusual, or such as reasonable men would not be likely to enter into."  76 Ohio St. 3d at 316; 677

N.E.2d at 954.

### G. This Case Is Different From *Mead Corp. v. ABB Power Generation, Inc.*

This case is different from *Mead Corp. v. ABB Power Generation, Inc.*, 141 F. Supp. 2d

914 (S.D. Ohio), *aff'd in part and rev'd in part*, 319 F.3d. 790 (6th Cir. 2003).  In *Mead*, the

contract was "open to the interpretation that ABB Power is contractually obligated to reimburse

Mead for direct injuries to Mead itself, and that Article 16 applies beyond third party claims."

319 F.3d at 798.  However, the contract "as a whole" could be "read consistently either to allow

*or* disallow indemnity claims for Mead's direct losses caused by ABB Power's negligence."  *Id*.

The Sixth Circuit therefore concluded that the contract was "ambiguous as to this issue," and

construed the contract against Mead, "[b]ecause Mead drafted the contract" and "ambiguity

should be resolved in favor of ABB Power."  *Id*. at 798-99.

Here there is no ambiguity.  However, even if the scope of the indemnity provision were

unclear, the "tie breaker" available under Ohio law resolves any ambiguity in favor of AT&T

Mobility.  As discussed above, under Ohio law, "where the terms employed" in a contract "are

ambiguous and susceptible of two interpretations which seem equally fair, that interpretation

should be adopted which affords the greater indemnity."  *Linhart*, 1983 Ohio App. LEXIS 12895

at *7.

## II. THERE IS NO EVIDENCE THAT AT&T MOBILITY USED THE ASSIGNED ASSETS TO DEVELOP THE ACCUSED PRODUCTS AND SERVICES, BUT EVEN IF THERE WERE, PLAINTIFFS COULD NOT BRING THE PRESENT LAWSUIT FOR PATENT INFRINGEMENT.

As indicated above, the Assignment Agreement specifically stated that Sygnet Wireless:

expressly reserves the right to improve, invent, develop, patent, submit for any
application for patent, or other forms of protection, at any time for all past,
present, and future inventions and devices...

(A 3, ¶2)  As Sygnet Wireless's successor, AT&T Mobility now has the full benefit of this contract provision.

The AT&T Mobility products and services that are accused of infringement in this case all fall within this safe harbor, because they were developed independently of the patents-in-suit by AT&T Mobility or its vendors.

> **A.     If Plaintiffs Wanted to Argue that AT&T Mobility Used the Assigned Assets to Develop the Accused Products and Services, Plaintiffs Were Obliged to Accompany Their Response Brief With Evidence Sufficient to Create a Disputed Issue of Fact.**

In moving for summary judgment, AT&T Mobility was only obliged to point to the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Having done so, the burden shifted to plaintiffs to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  The "non-moving party may not simply rely on its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury." *Clarke v. United States*, 2009 U.S. Dist. LEXIS 18916 at *3 (March 4, 2009 N.D. Ohio) (internal quotation marks omitted).

Plaintiffs have not satisfied their burden, having failed to produce any evidence that AT&T Mobility or its vendors "used" the patents-in-suit to develop any of the accused products and services.

> **B.     In Any Event, Even If AT&T Mobility Breached the Contract With Sycord Limited Partnership, Plaintiffs' Present Cause of Action Sounds in Tort, Not Breach of Contract, and All Tort Claims Relating to the Assigned Assets Are Barred by the Indemnity Right.**

In any event, even if AT&T Mobility had "used" the patents-in-suit to develop new products and services, that would arguably represent a breach of contract.  The other party to the

Assignment Agreement – Sycord Limited Partnership – might possibly have had the ability to sue for breach of contract;  whether a breach of contract claim would have been barred by the indemnity provision of the Assignment Agreement is debatable.  As Judge Zagel recognized in *Airtran Airways, Inc. v. City of Chicago*, 2003 U.S. Dist. LEXIS 26939 at *5 (N.D. Ill. Dec. 16, 2003), it is "unclear whether an indemnification clause – traditionally used in the context of tort claims – can be applied to a breach of contract claim."

The present case is not a claim for breach of contract, however.  It involves the tort of patent infringement.  *See Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008) (the "U.S. Patent Act" defines "the tort of patent infringement").  Because the claims in this case sound in tort, they are barred by AT&T Mobility's indemnity right, whether there is an underlying breach of contract or not.

Plaintiffs' response brief says that plaintiffs intend "to move the Court for leave to file an amended complaint" to add "a claim for relief based on Defendant's breach of its assumed agreement not to use the Assigned Assets, which include the patents-in-suit."  Pl. Mem. at 7 n.1.  However, no such motion to amend has been filed, no contract claim is now in the case, and neither plaintiff would have had standing to assert a breach of contract claim (because they did not contract with Sygnet Wireless, and the Assignment Agreement itself has never, so far as this record reveals, been assigned to either of them).  In any event, adding Sycord Limited Partnership as the plaintiff on a breach of contract claim would be futile, because plaintiffs have come forward with no evidence that AT&T Mobility or its vendors made use of the patents-in-suit to develop any of the accused products and services.

**III.   EVEN IF THE INDEMNITY RIGHT WERE LIMITED TO THIRD PARTY CLAIMS, THE INDEMNITY RIGHT WOULD STILL BAR THIS LAWSUIT BECAUSE ONE OF THE PLAINTIFFS, LOCATION BASED SERVICES LLC, IS A THIRD PARTY.**

Even if plaintiffs were correct that AT&T Mobility's indemnity right was limited to third party claims, the present cause of action would still be covered by the indemnity right (and therefore barred).  After all, one of the plaintiffs, Location Based Services LLC, is not an affiliate of Sycord Limited Partnership, and the Assignment Agreement itself was never assigned to it.  While Location Based Services LLC is a successor to Sycord Limited Partnership insofar as ownership of patent rights is concerned, it is a third party in the context of the Assignment Agreement.  Its claim for patent infringement therefore qualifies as a third party claim.

Dismissing only Location Based Services LLC is not an option here, because Location Based Services LLC is the exclusive licensee of the patents-in-suit, and it "possesses the exclusive right to sue for past, present, and future infringement."  *Complaint*, ¶12 (Mar. 31, 2008) (Filing No. 1).  Without it as a party plaintiff, no cause of action for patent infringement can be maintained.  *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876 (Fed. Cir. 1991) (exclusive licensee alone could maintain patent infringement suit where it had "the sole right to sue for all infringements, past, present, and future as well").

**IV.   UNDER THE LAW WHICH GOVERNS THIS CASE, CIRCULAR INDEMNITY BARS PLAINTIFFS' PATENT INFRINGEMENT CLAIM.**

Plaintiffs contend that construing an indemnity right to cover a patent infringement claim would violate Ohio public policy.  They also argue that circular indemnity (the obligation of the plaintiff to indemnify its adversaries for the claim that the plaintiff itself has brought) has never been used to bar a patent infringement claim.  Neither contention is correct.

A.      **Indemnification For Patent Infringement Does Not Violate the Public Policy of Ohio, But Instead Is an Implied Term Imposed By the Ohio Uniform Commercial Code On Many Sales of Goods.**

Plaintiffs say that indemnification for patent infringement would violate the public policy of Ohio, because "Ohio law prohibits parties from covering damage caused by intentional torts where there is intent to harm, which may be found where there is a 'substantial certainty' that harm will result from the act."  Pl. Mem. at 14.  But patent infringement is not this type of intentional tort.  Indeed, as indicated above, one can unintentionally infringe a patent claim, simply by developing a product that coincidentally falls within the scope of the patent claims.  *See Hilton Davis*, 62 F.3d at 1520 ("[i]ndependent development does not excuse infringement of the patent owner's right to exclude").

No Ohio court has ever invalidated a patent indemnity provision on public policy grounds.  Indeed, indemnification for patent infringement cannot possibly violate the public policy of Ohio, because the Ohio Uniform Commercial Code imposes such an indemnity as an ***implied*** term in many Ohio contracts involving the sale of goods:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Ohio Rev. Code Ann. 1302.25 (2009).  *See Cover v. Hydramatic Packing Co.*, 83 F.3d 1390, 1394 (Fed. Cir. 1996) (identical provision of Pennsylvania Uniform Commercial Code, "[o]n its face," shifts all costs, including attorneys fees, to the buyer who furnishes a seller with specifications that lead to a "rightful claim" of patent infringement).

### B.     Circular Indemnity Has Been Used Before to Bar a Patent Infringement Claim.

Application of circular indemnity to bar an indemnitor from asserting a patent infringement claim is hardly novel, as plaintiffs suggest.  In *RFR Industries, Inc. v. Rex-Hide Industries, Inc.*, 2007 U.S. App. LEXIS 7015 (Fed. Cir. March 23, 2007) (unpublished), the Federal Circuit approved the use of circular indemnity to bar a patent infringement suit.[1]

In *RFR*, the patent owner (RFR) settled with an accused infringer (Century), and agreed that RFR would "indemnify and hold harmless Century…from any claim made against Century…by any [supplier of flangeway filler] as a result of any RFR claim against any [supplier]."  *RFR Industries*, 2007 U.S. App. LEXIS 7015 at *13.  The agreement specifically identified a third party, Rex-Hide, as one such supplier.

RFR later sued Rex-Hide for patent infringement, seeking an award of damages for flangeway filler that Rex-Hide had supplied to Century.  Century had agreed to indemnify Rex-Hide for that filler.  Rex-Hide demanded indemnification from Century, which in turn demanded indemnification from RFR.  *Id.* at *4.  The District Court held that "RFR's duty to indemnify Century and Century's duty to indemnify Rex-Hide 'creates a circular indemnity that extinguishes RFR's patent-infringement claims against Rex-Hide.'"  *Id.* at *5.  The indemnity was "circular" because if plaintiff RFR recovered any money from its adversaries, it was obliged to pay over that money to its adversaries – precisely the situation in the present case.  Given the existence of the circular indemnity, the Federal Circuit affirmed "the district court's determination that RFR cannot recover damages for patent infringement from Rex-Hide."  *Id.* at

---

[1] While the Federal Circuit's decision is unpublished, it issued after January 1, 2007, and therefore is properly cited here.  *See* Fed.R.App.Pr. 32.1 (permitting citation of unpublished decisions issued after January 1, 2007).

*19.  *See also Airtran, supra* (dismissing non-patent claim because plaintiff was obliged to indemnify defendant for asserted claim); *Hedged Investment Partners, L.P. v. Norwest Bank Minn., N.A.,* 578 N.W.2d 765, 722 (Minn. Ct. App. 1998) (same).

Notably, plaintiffs' response brief fails to cite even one case where a patent owner that was obliged to indemnify the defendant was nonetheless permitted to proceed on the merits to present an infringement case to the jury.  Nor does plaintiff cite even one case where this result obtained outside the patent context.

## V.      PLAINTIFFS' "DECREASE IN VALUE" ARGUMENT IS MERITLESS.

Plaintiffs argue that AT&T Mobility's interpretation of the Assignment Agreement would "render Dobson's assignment of rights to Defendant unenforceable, because such an interpretation would materially and unreasonably decrease the value of the Assignment Agreement," thus giving rise to an "exception to the assignability of contract rights under Ohio law."  Pl. Mem. at 13.

But as explained in AT&T Mobility's opening brief, Sycord Limited Partnership consented to a future assignment of the indemnity right by Sygnet Wireless, without regard to its impact on Sycord's duty, burden, or risk under the contract.  *See* Brief of AT&T Mobility LLC in Support of Its Motion for Summary Judgment at 11-13 (February 3, 2009) (Filing No. 39). Sycord's contractual assent to future assignments was unqualified:  "[t]his Agreement and all or any part" of Sygnet Wireless's "rights and obligations hereunder may be assigned at any time by the Company."  (A 6, ¶12)  As noted in the *Restatement (Second) of Contracts*, a "term of a contract manifesting an obligor's assent to the future assignment of a right" is "effective despite any subsequent objection."  *Restatement (Second) of Contracts* § 323(1) (1981).  Indeed, the obligor's "assent may operate to preclude objection" to an assignment "based on a change in his

duty, burden, or risk," depending on "the circumstances and the scope of the assent manifested."

*Id.* cmt. a.  Plaintiffs simply ignore the unqualified consent given by Sycord Limited Partnership.

## VI.   BECAUSE AT&T MOBILITY'S INDEMNITY RIGHT COVERS ALL OF THE PERIOD AT ISSUE, THE ENTIRETY OF PLAINTIFFS' PATENT INFRINGEMENT CLAIM IS BARRED.

The Assignment Agreement provided that "[t]his Agreement and all or any part" of

Sygnet Wireless's "rights and obligations hereunder may be assigned at any time by the

Company."  (A 6, ¶12)  Once the Assignment Agreement was assigned to AT&T Mobility, it

stood in the shoes of Sygnet Wireless and enjoyed the benefit of Sygnet's indemnity right.  *See*

*General Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1373 (Fed. Cir. 2007) (enforcing

patent-related covenant-not-to-sue and release that had been transferred to a successor).

Under the Assignment Agreement, AT&T Mobility is entitled to be indemnified "from

and against any and all losses, liabilities, damages, claims, demands, costs (which costs shall not

include the fees and expenses of legal counsel, if any, retained by such person), obligations,

deficiencies and expenses arising from the Assigned Assets ***occurring after the Effective Date***

***[defined as June 5, 1998]***."  (A 4, ¶6(a), emphasis added)  Plaintiffs have presented no evidence

that any of their patent infringement claims arose before June 5, 1998.  Their entire claim is

therefore barred by AT&T Mobility's indemnity right.

To be sure, the parties could have drafted the contract to preserve any patent infringement

claims against the assignee that predated the assignment.  But they did not.

## CONCLUSION

When the "terms of a contract are clear and unambiguous, no genuine issues of material

fact remain and the trial court may enter judgment as a matter of law."  *Battelle*, 56 F.Supp.2d at

952.  Plaintiffs' response is notable for its failure to identify even one disputed issue of fact.  The

present controversy turns wholly on issues of law which the Court can and should resolve now.

As a matter of law, AT&T Mobility's indemnity right bars the present patent infringement claim. If AT&T Mobility is right, and the indemnity provision extends to both third party reimbursement situations and direct losses suffered by the parties, the indemnity covers the patent infringement claims of both plaintiffs here. Even if plaintiffs are right, however, and the indemnity provision only covers third party claims, the claims of Location Based Services LLC (a third party) are covered, and that ends the case (because EMSAT Advanced Geo-Location Technology, LLC cannot proceed alone).

Summary judgment should therefore be entered in AT&T Mobility's favor, and the case should be dismissed with prejudice.

Dated:  March 23, 2009                     Respectfully submitted,

By:_____*/s Charles B. Lyon*_____
      Charles B. Lyon (0019668)
      clyon@calfee.com
      Virginia Davidson (0025773)
      vdavison@calfee.com
      Nenad Pejic (0066347)
      npejic@calfee.com
      Jennifer B. Wick (0074340)
      jwick@calfee.com
      CALFEE, HALTER & GRISWOLD LLP
      800 Superior Avenue, Suite 1400
      Cleveland, Ohio 44114
      Phone:  (216) 622-8200
      Fax:  (216) 241-0816

      William H. Baumgartner, Jr. (*pro hac vice*)
      wbaumgartner@sidley.com
      SIDLEY AUSTIN LLP
      1 S. Dearborn Street
      Chicago, Illinois 60603
      Phone:  (312) 853-7000
      Fax:  (312) 853-7036

      *Attorneys for Defendant AT&T Mobility LLC*

## <u>CASE AND PAGE CERTIFICATION</u>

Pursuant to Local Rule 7.1(f), I certify that this case has been assigned to a "complex"

track.  I certify that this supporting memorandum adheres to the page limitation set forth in Local

Rule 7.1(f) for "complex" track cases.


_____*/s/ Charles B. Lyon*_____
One of the Attorneys for Defendant
AT&T Mobility LLC

## CERTIFICATE OF SERVICE

I certify that on March 23, 2009, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


____/s/ Charles B. Lyon_____
One of the Attorneys for Defendant
AT&T Mobility LLC

CH1 4622347v.1

24